IN THE UNITED STATED DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHANIE DORRIS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No.  3:16-CV-508 |
| | ) |
| UNUM LIFE INSURANCE COMPANY | ) |
| OF AMERICA, | ) |
| | ) |
|     Defendant. | ) |

**COMPLAINT**

Now comes the Plaintiff, Stephanie Dorris, by and through her attorneys, Paul T. Slocomb, and Hoffman & Slocomb, LLC, and Complaint against the Defendant, Unum Life Insurance Company of America, she states:

*Jurisdiction and Venue*

1. Jurisdiction of this Court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"); and, in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f).  Those provisions give district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan which, in this case, consists of a group long-term disability insurance plan underwritten and insured by Unum Life Insurance Company of America, for the benefits of employees of Beans Plus, Inc. and The Stock Minders, Inc.  In addition, this action may be brought before this Court pursuant to 28 U.S. C. § 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States. The ERISA statute provides, at U.S.C. § 1133, a mechanism for administrative or internal appeal of

1

benefit denials. Those avenues of appeal have been exhausted. Therefore, this matter is ripe for judicial review.

2. Venue is proper in the Southern District of Illinois. 29 U. S. C. § 1132(e)(2); 28 U.S.C. § 1391.

### *Nature of the Action*

3. This is a claim seeking disability income benefit payments to Plaintiff pursuant to a policy of group long-term disability insurance underwritten and insured by Unum Life Insurance Company of America, Policy NO. 522318. (A true and correct copy of the disability insurance policy is attached hereto and by that reference incorporated herein as Exhibit "A") This action, seeking recovery of benefits, is brought pursuant to § 502(a)(1)(B) of ERISA (29 U. S. C. § 1132 (a) (1)(B) and § 503 of ERISA (29 U. S. C. § 1133)).

### *The Parties*

4. The Plaintiff, Stephanie Dorris ("Dorris" or "Plaintiff"), is and was at all times relevant hereto a resident of Belleville, Illinois. The events, transactions, and occurrences relevant to Dorris's claim of disability took place within the jurisdiction of the Southern District of Illinois.

5. The Defendant, Unum Life Insurance Company of America ("Unum" or "Defendant"), is the underwriter and insurer of a Long-Term Disability Plan ("Plan"), Group Policy No. 522318. (See Attached as Exhibit "A"). At all times relevant hereto, Unum was engaged in the business of insurance and in the administration of benefits under the aforementioned policy of insurance within the Southern District of Illinois.

6. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1); incident to her employment, Dorris received coverage

under the Plan as a "participant", as defined by 29 U.S.C. § 1002(7). This claim relates to benefits under the foregoing Plan.

### *Unum Plan Provisions*

7. Pursuant to the Plan, "disability" is defined as follows:

"Disability" and "disabled" mean that because of injury or sickness:
1. You cannot perform each of the material duties of your regular occupation; and
2. After benefits have been paid for 24 months, you cannot perform each of the material duties of any gainful occupation for which you are reasonably fitted by training, education or experience; or
3. You, while unable to perform all of the material duties of your regular occupation on a full-time basis, are:
   a. Performing at least one of the material duties of your regular occupation or another occupation on a part-time or full-time basis; and
   b. Currently earning at least 20% less per month than your indexed pre-disability earnings due to the same injury or sickness.

(Exhibit "A", Plan LC-CR Rider).

8. The Policy also provides that "Benefits for disability due to mental illness will not exceed 24 months of monthly benefit payment…" The policy further states that "'mental illness' means mental, nervous or emotional diseases or disorders of any type." (Exhibit "A", LC-Ben-5).

### *Statement of Facts related to Dorris' LTD Claim*

9. Dorris, age 53, was employed in the capacity of President/Owner The Stock Minders, Inc. d/b/a at Beans Plus, Inc. until February 2001, when she was forced to cease working due to endometriosis and severe abdominal pain.

10. Dorris made a claim for long-term disability (LTD) benefits under the Plan.

Dorris began receiving disability benefits from Unum under the terms of the Plan in February, 2002.

11. In early 2005 Dorris was diagnosed with Lyme Disease based on Blood Work and Clinical Examination.

12. Since that time Unum has never disputed the fact that Dorris was in fact properly diagnosed with Lymes Disease based upon Blood Testing and Clinical Diagnosis and suffers form Chronic Lyme Disease.

13. Dorris also applied for and was awarded Social Security Disability Benefits on September 11, 2007 primarily based upon the effects of Lyme Disease. The Social Security Administration defines disability as an inability to engage in "any substantial gainful activity." 42 U.S.C. § 423(d)(1)(A) (a true and a correct copy of the Social Security award letter is attached hereto and by that reference incorporated herein as Exhibit "B").

14. Unum periodically reviewed Dorris' disability status from 2002 until 2015 and consistently found that, due to the effects of Chronic Lyme Disease, Dorris' LTD Benefits should continue. In March, 2013, more than ten years after Unum originally approved Dorris' claim, Unum completed a clinical medical review of Dorris' file and found that the medical information "supports impairment". On March 13, 2015 Unum wrote Dorris and revealed that it was "currently reviewing your Long Term Disability Claim" and further indicated in the letter that:

> **Your Right to Request An Independent Medical Examination**
> Our evaluation of your medical restrictions and limitations includes a review of your medical records. As we perform our review of your claim, it is your right, or the right of your attending physician, either directly or through your representative, to request an "independent medical examination" (IME) should opinions differ on the degree of medical impairment. Any such request will be evaluated under our IME protocol and guidelines including consideration of whether our decisions is related

>to your medical condition. We will consider your request in a timely manner and provide you with our response in writing.

Dorris continued to receive benefits during this review period. Between March, 2015 and September 23, 2015, the date Dorris' benefits were discontinued, Unum never notified Dorris that there was any disagreement regarding the degree of medical impairment as established by Dorris' treating physicians nor did Unum offer Dorris an Independent Medical Examination (IME). The failure to offer an IME violated Unum's own policies.

15. Dorris's LTD benefits were discontinued effective September 23, 2015. Unum provided its decision in writing. Unum referenced the policy definition of "Disability" in its written decision. Unum did not reference the "Mental Illness" policy limitation in its written decision.

16. Thereafter, on December 18, 2015, Dorris, through counsel, exercised her right under 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1 to seek a full and fair review of Unum's determination. Dorris submitted additional medical records from her primary treating physician and statements from those how directly observed Dorris' activities in support of her request for review via fax on December 18, 2015.

17. On December 21, 2015, Unum acknowledged that it had received the request for review and supporting records on December 18, 2015 and "committed" to make a determination within 60 days. On January 20, 2016 Unum informed counsel for Dorris that her file had been referred to Unum's medical consultant for review. On February 1, 2016, counsel for Dorris wrote Unum and asked Unum to let him know if Unum needed anything additional to complete its review. Having received no response, counsel for Dorris again wrote Unum on February 16, 2016 asking for a status in Unum's promised determination.

18. That same day, 61 days after it received the appeal, Unum unilaterally notified counsel for Dorris that it would need an additional 60 days, through April 16, 2016, to make its determination.

19. Unum failed to provide an explanation for the alleged need for an additional 60 days.

20. On February 16, 2016 counsel for Dorris contacted Unum and asked Unum to explain why Unum needed additional time to complete its review. Unum failed to respond to this request so follow up letters were written on February 17, 2015 and February 25, 2016. Unum finally responded to these requests on February 25, 2015 and claimed that it needed more time to review the medical support for impairment of function. Unum has failed to establish "special circumstances" so as to allow Unum to unilaterally extend its time to render a determination and this extension beyond 60 days was a violation of 49 C.F.R. 2560.503-1(h)(1)(i).

21. On March 25, 2016 Unum informed counsel for Dorris that the medical consultant, who received Dorris' file sometime before January 20, 2016, was still reviewing the file. On April 5, 2016, just days before it promised to complete its review. Unum requested an open ended extension from the April 16, 2016 extended deadline to obtain a neuro-psychiatric examination and then to render its determination some unknown time after the deadline of April 16, 2016. At no time prior to this date had Unum ever requested such an examination. In fact the Unum physician that reviewed Dorris' file in September 2015 opined that an Independent Medical Examination was unnecessary.

22. On April 8, 2016 counsel for Dorris wrote Unum and asked for them to provide the basis for which it sought this unilateral extension which would result in a determination by Unum well beyond the statutory 120 day limit.

23. On April 8, 2016, Unum wrote counsel for Dorris and again asked for an open-ended extension to finalize its determination. Unum proposed that Dorris provide dates over the course of the next eight weeks to undergo an exam and then Unum proposed to make its determination 30 days after the examination was complete. This would potentially result in a determination by Unum in July, 2016, which is more than seven months after the appeal was filed by Dorris.

24. On April 13, 2016, counsel for Dorris wrote Unum and declined Unum's invitation to agree to an open ended extension.

25. Although Dorris' proof of claim was adequate to support her disability, Unum sent a letter to counsel for Dorris on April 15, 2016 indicating that, "after completing" its review, the decision to terminate benefits would be upheld.

26. In its decision Unum also wrongfully asserted an entirely new reason for denial: the 24 month "Mental Illness Limitation". The failure of Unum to identify the "Mental Illness" limitation in the original denial of benefits constitutes a violation of Section 503 of ERISA and 29 CFR 2560.503-1(f).

27. Additionally, Unum has applied the Mental Illness limitation in the Policy in the manner of a default provision, whereby it assumed that Dorris' disabling symptoms were caused by a Mental Illness rather than a physical illness.

28. The Mental Illness limitation in the Policy is not a default provision.

29. The phrase "mental illness" in the policy in question is vague and ambiguous.

30. Under the doctrine of *contra proferentem* the policy's "mental illness" limitation is ambiguous and must be construed against Unum.

31. Dorris' alleged "mental illness", as claimed by Unum, is not a "mental illness'

under the policy but instead are merely the manifestations of Dorris' established physical illnesses.

32.   The evidence submitted to Unum established Dorris' entitlement to payment of LTD benefits, retroactive to September 23, 2015.  Since September 23, 2015, Dorris has consistently satisfied Unum's definition of "Disability".  Unum's contrary determination failed to fully and fairly consider Dorris' physical impairments.

33.   Independent of and irrespective of Dorris' mental illness, as alleged by Unum, Dorris presented evidence establishing marked functional limitations due to impairments secondary to Lyme Disease.  Therefore, Unum failed to meet its burden of establishing the applicability of the policy limitation relating to mental illness.

34.   Unum also failed to comply with its fiduciary obligations under ERISA (29 U.S.C. § 1104(a)(1)) and employ "higher-than-marketplace quality standards" in fully, fairly and accurately adjudicating her claim.  <u>Metro. Life Ins. Co. v. Glenn</u>, 554 U.S. 105, 115 (2008).

35.   The actions taken by Unum as described herein were in bad faith. Based on the evidence submitted to Unum establishing Dorris has meet and continues to meet the Plan's definition of disability, Dorris is entitled to all LTD benefits due since September 23, 2015, and such benefits must continue until she recovers from disability, dies, or reaches the age of 65, whichever comes first.

### *Unum's Conflict of Interest*

36.   At all relevant times, Unum has been operating under an inherent and structural conflict of interest because, on the one hand, Unum is liable for benefit payments due to Dorris and, on the other hand, each such payment depletes Unum's assets.

37.     In November, 2004, Unum was forced to enter into a Regulatory Settlement Agreement ("RSA") with the U.S. Department of Labor and state insurance regulators from 48 states.  Under the RSA, Unum promised to change its claims handling procedures and reassess thousands of claims.  (A copy of the RSA is attached hereto as "Exhibit C").

38.     In its Report of the multistate Market Conduct Examination as of December 31, 2007, Unum reported to the States that, after reassessment, 45.1% of Unum's claims denials prior to November 2004 were unjustified, <u>even according to Unum</u>.  (A copy of the Multistate Market Conduct Examination is attached hereto as "Exhibit D").

39.     The article of Yale Law Professor Langbein titled, "Trust Law as Regulatory Law:  The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA", 101 NW. U.L. Rev. 1315 (2007), meticulously describes how Unum instituted cost-containment measures that pressured claims-processing employees to deny valid claims.  *Id.* At 1317-1321.

40.     The Supreme Court singled out Unum's past history as being illustrative of the type of factor that should be considered in assessing the importance of an insurer's conflict:

> The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration.  See Langbein, *supra*, at 1317-1321 (detailing such a history for one large insurer).  <u>Metropolitan life Ins. Co. v. Glenn</u>, 128 S. Ct. 2343, 2351 (2008)

41.     Following the lead in <u>Glenn</u>, the Second Circuit also singled out Unum's past history for increased judicial scrutiny.  *See*, <u>McCauley v. First Unum Life Ins. Co.</u>, 551 F. 3d 126, 137 (2d Cir. 2008), "In light of First Unum's well-documented history of abusive tactics, and in the absence of any argument by First Unum showing that it has changed its internal procedures in response, we follow the Supreme Court's instruction and emphasize this factor her. Accordingly, we find First Unum's history of deception and abusive tactics to be additional

9

evidence that it was influenced by its conflict of interest as both plan administrator and payor in denying McCauley's claim for benefits."

42. Unum's practices were also described in detail in <u>Merrick v. Paul Revere Life Ins. Co.</u>, 594 F. Supp.2d 1168 (D. Nev. 2008), a bad faith case and trial. The Court found that Unum "set targets and goals for claim terminations to obtain financial gain and without respect to claim merit." *Id*. At 1171. At the trial, Unum did not offer a single witness who could testify that Unum's practices have changed since the RSA. *Id*. At 1183.

43. Upon information and belief, Unum has failed to take active steps to reduce potential bias and to promote the accuracy of its benefit determinations.

## COUNT I: Section 502(a)(1)(B) ERISA Claim

44. Dorris hereby incorporates by reference, as if fully set forth herein, paragraphs one through forty-three as and for paragraphs one through forty-three of this Count I.

WHERFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against the Defendant and that the court order the Defendant to pay long-term disability benefits to Plaintiff in an amount equal to the contractual amount of benefits to which she is entitled;

B. That the Court order the Defendant to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

C. That the Court order Defendant to continue paying Plaintiff benefits so long as she continues to meet the policy conditions for discontinuance of benefits;

D. That the Court award Plaintiff her attorney's fees, pursuant to 29 U.S.C. § 1132(g); and;

E.  That Plaintiff be awarded any and all other relief to which she may be entitled, as well as the costs of suit and prejudgment interest.

## COUNT II: Section 503 ERISA Claim

45.   Dorris hereby incorporates by reference, as if fully set forth herein, paragraphs one through forty-three as and for paragraphs one through forty-three of this Count II.

WHERFORE, Plaintiff prays for the following relief:

A.  Declare that Unum wrongfully terminated Dorris benefits;

B.  That the Court enter judgment in Plaintiff's favor and against the Defendant and that the court order the Defendant to reinstate long-term disability benefits to Plaintiff in an amount equal to the contractual amount of benefits to which she is entitled;

C.  That the Court order the Defendant to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

D.  That the Court award Plaintiff her attorney's fees, pursuant to 29 U.S.C. § 1132(g); and;

E.   That Plaintiff be awarded any and all other relief to which she may be entitled, as well as the costs of suit and prejudgment interest.

RESPECTFULLY SUBMITTED,

HOFFMAN SLOCOMB LLC

_____/s/ *Paul T. Slocomb*_____
Paul T. Slocomb   #6226129
Hoffman Slocomb LLC
1115 Locust Street, 4th Floor
St. Louis, MO 63101
Facsimile 314-231-0323
(314) 436-7800
Email:  paulslocomb@yahoo.com
Attorney for Plaintiff Stephanie Dorris